IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 15-cv-2268-WJM-NYW

GEORGE MILLER,

    Plaintiff,

v.

BNSF RAILWAY COMPANY, a Delaware Corporation,

    Defendant.

---

**ORDER GRANTING IN PART DEFENDANT'S MOTION TO STRIKE
THE EXPERT TESTIMONY OF JOE LYDICK**

---

In this case brought pursuant to the Federal Employer's Liability Act, 45 U.S.C. §§ 51 *et seq.* ("FELA"), Plaintiff George Miller ("Plaintiff") seeks to recover from Defendant BNSF Railway Company ("Defendant" or "BNSF") for alleged negligence leading Plaintiff to be injured while employed by BNSF. Now before the Court is Defendant's Motion to Strike the Expert Testimony of Joe Lydick. (ECF No. 46.) For the reasons explained below, the motion is granted in part and denied in part.

### I. BACKGROUND

The following facts are undisputed except where attributed otherwise. Additional facts and evidence are addressed in greater detail where relevant below.

Plaintiff was employed by Defendant beginning May 16, 2011, and worked in the "Maintenance of Way Department," which maintains Defendant's railroad tracks. (ECF No. 45 at 2, ¶ 1.) He worked as a section laborer, and eventually as a truck driver. (*Id.* ¶ 3.) As a truck driver, he had the same responsibilities as a laborer when on a jobsite.

(*Id.*)  In both positions, his work included removing railroad spikes; depending on the specific job, he did this frequently.  (*Id.* at 3, ¶ 4.)

On October 24, 2012, Plaintiff was tasked to remove several railroad spikes at a location in Golden, Colorado, using a tool called a "claw bar."  (*See id.* at 4, ¶¶ 6, 9, 10; *see also* ECF No. 61 at 5; ECF No. 46-1 at 3.)  Plaintiff had used a claw bar to remove spikes on many occasions without injury, and felt he could do so safely on this occasion.  (ECF No. 45-1 at 18–19.)  After kicking the bar onto the spike, "right off the get-go," Plaintiff "pulled [on the claw bar] with everything he had."  (ECF No. 45 at 3, ¶ 6; ECF No. 53 at 11; ECF No. 45-1 at 27–28.)[1]  The spike came loose, and the bar hit Plaintiff in the shoulder.  (ECF No. 45 at 3, ¶ 6; ECF No. 53 at 11; *see also* ECF No. 61 at 5–6.)  In his deposition, Plaintiff testified that the spike simply "fell out" when he pulled on the bar, and was "too easy" to remove.  (ECF No. 45-1 at 31.)

This lawsuit followed, claiming damages arising from Plaintiff's alleged shoulder injury. Plaintiff brings a single claim for negligence pursuant to the FELA, but he advances numerous interrelated negligence theories, including:  "that Defendant was negligent for [1] not providing a safe place to work, [2] not providing Plaintiff with the proper tools and equipment, [3] not providing an adequate crew, [4] not having a foreman at the jobsite, [5] not having a track inspector at the jobsite, [6] not providing Plaintiff with proper oversite [*sic*], [7] not enforcing its policies, and [8] not providing the crew reasonable means to get track time."  (ECF No. 61 at 2.)

Plaintiff has disclosed a retained expert, Mr. Joe Lydick, to offer expert testimony

---

[1] All citations to docketed materials are to the page numbers found in the ECF header, which frequently differ from the documents' internal pagination.

in support of his claims. Defendant's present motion seeks to exclude Mr. Lydick's testimony pursuant to Federal Rule of Evidence 702.

## II. LEGAL STANDARD

A district court must act as a "gatekeeper" in admitting or excluding expert testimony. *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2004). Admission of expert testimony is governed by Rule 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The proponent of the expert testimony bears the burden of proving the foundational requirements of Rule 702 by a preponderance of the evidence. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

While an expert witness's testimony must assist the jury to be deemed admissible, Fed. R. Evid. 702(a), it may not usurp the jury's fact-finding function. *See Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988). The line between what is helpful to the jury and what intrudes on the jury's role as the finder of fact is not always clear, but it is well-settled that "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704.

Ultimately, "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 advisory committee's note. "[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system. . . .

3

Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993)).

In addition, the Court must confirm that an expert's proposed testimony is relevant. *See Daubert,* 509 U.S. at 589 ("The trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."); *Adamscheck v. Am. Family Mut. Ins. Co.*, 818 F.3d 576, 588 n.7 (10th Cir. 2016) ("[A] district court must decide first, whether the expert testimony is reliable, and second, whether it is relevant."). The Tenth Circuit has explained that the district court's role as a "gatekeeper" requires the court to "make specific factual findings on the record which are sufficient for an appellate court to review the trial court's conclusion concerning whether the testimony was scientifically reliable *and factually relevant*." *Bitler*, 400 F.3d at 1232 (emphasis added). To be relevant, expert testimony must "logically advance[ ] a material aspect of the case" and be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *United States v. Garcia*, 635 F.3d 472, 476 (10th Cir. 2011).

### III. ANALYSIS

Mr. Lydick is a railroad safety consultant, formerly employed by the Fedreal Railroad Administration and CSX, and retained by Plaintiff to opine regarding Defendant's "acts or omissions in regard to [Plaintiff's] injuring his right shoulder while pulling a track spike with a claw bar." (*See generally* ECF No. 46-1 at 2–3.)

As organized in his written report, Mr. Lydick offers eight opinions (*see id.* at

4

11–13), and Defendant argues they are all inadmissible (ECF No. 46). Although several of the eight opinions raise multiple issues, for ease of reference, the Court will analyze them in turn, following Mr. Lydick's organization.

### A. Opinion 1 (Summary Opinion)

Mr. Lydick's "Opinion 1" is a summation stating that Defendant is "responsible to ensure its employees have reasonably safe equipment and a place to work," and "failed to live up to [its] responsibilities," based on "the reasons stated in the other opinions." (*Id.*) The Court agrees with Defendant that this "states no stand-alone opinion." This opinion is admissible only to the extent it is supported at trial by the specific opinions and explanations addressed below. *See Nacchio*, 555 F.3d at 2358 ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." (quoting *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

### B. Opinion 2 (Lack of a Foreman)

Mr. Lydick opines that BNSF violated its policies and standards "by not having a BNSF Foreman present at the job site," and that this was "more concerning because the crew was relatively inexperienced." (*Id.*) Defendant argues that "Mr. Lydick never explains how a foreman's presence would have prevented Plaintiff's injury," and that Mr. Lydick's opinion on this point is therefore "immaterial," that is, irrelevant. (ECF No. 46 at 5–6.) Mr. Lydick offers two explanations of how the lack of a foreman is relevant to Plaintiff's claims: (1) that "the absence of such a person led to [Plaintiff] not staging his truck into a position in which the hydraulic tool could reach the work area," and (2) that "there was no person providing direction to the crew about the manner in which

they were working." (*Id.*)  These two arguments require separate analysis.

### 1. <u>Lack of Supervision or Direction on Proper Use of Claw Bar</u>

Plaintiff argues that Plaintiff was not properly trained on use of the claw bar, that "a foreman should have been there," and that "[a] foreman should have corrected [Plaintiff] in the manner he used the claw bar." (ECF No. 56 at 19–20.)  These arguments relate to Plaintiff's theory that his injury was the result of negligent and inadequate training on use of the claw bar. (ECF No. 56 at 16, 19.)  Contrary to Defendant's argument, Mr. Lydick therefore has explained how the absence of a foreman contributed to Plaintiff's injuries in this regard, stating he lacked "direction about the manner" in which he was working, and that a foreman should have been responsible "to ensure that tools were being used properly." (ECF No. 46-1 at 11, 12.)

Furthermore, the question of whether a foreman might have prevented Plaintiff from mis-using the claw bar is both relevant and in dispute, along with the factual dispute as to whether Plaintiff was adequately trained.  Therefore, Mr. Lydick's opinions on this point are admissible because they advance a material aspect of the case, are tied to the facts and evidence, and will aid the jury.  *See Garcia*, 635 F.3d at 476.

Defendant argues that because Plaintiff testified that he would not have used the claw bar any differently if a supervisor had been watching him, Mr. Lydick's testimony on this point should be excluded. (ECF No. 46 at 6; ECF No. 46-3 at 22–23.)  Plaintiff's testimony on this issue is inherently speculative, and other evidence shows that the question of whether a foreman would or should have corrected Plaintiff's use of the claw bar is fairly in dispute.  Mr. Lydick opines—admissibly, as addressed below—that Plaintiff was never properly trained on how to use the claw bar. (*See* ECF No. 46-1 at

6

12; ECF No. 53-5 at 1.) One can therefore infer that the reason Plaintiff said he would not have changed how he used it in foreman's presence is because he was not aware there was a safer way. The issue remains in dispute based on the record as a whole, irrespective of Plaintiff's individual testimony on this point.

Defendant makes no specific argument on this point on any grounds other than relevance. Although Defendant's Motion generally argues that Mr. Lydick's opinions lack a factual basis and are unreliable, the Court finds his opinions to be admissible under Rule 702. There is no challenge to Mr. Lydick's qualifications under Rule 702(a). As to the basis and methodology underlying his opinions, Fed. R. Evid. 702(b)–(d), BNSF's written safety rules state that a foreman's responsibilities include "[e]nsuring tools, materials, and equipment . . . are used . . . properly," "training, and ensuring the safety of employees under their charge," and "[e]nsuring work is performed safely [and] properly." (ECF No. 56 at 20; ECF No. 56-5.) Mr. Lydick relies on this rule, which provides a reasonable basis for him to opine that the absence of a foreman left "no person providing direction to the crew" (ECF No. 46-1 at 11), and further that "[if] a foreman had been present, as one should have been, it would have been his responsibility to ensure that tools were being used properly" (*id.* at 12). The evidence also includes BNSF's safety rule on how to use the claw bar, which Plaintiff did not follow. (ECF No. 45-1 at 33, 36.) This provides a further reasonable basis for Mr. Lydick's opinion that a foreman would have been responsible for ensuring that Plaintiff used the claw bar properly, *i.e.*, in compliance with this written safety rule.

Since Mr. Lydick's opinion is relevant and is admissible under Rule 702, Defendant's Motion is denied to the extent that Mr. Lydick may testify consistent with

7

his disclosed opinion(s) that absent a foreman, there was no person on the job site providing direction to Plaintiff about the manner in which he was working, and that it would have been a foreman's responsibility to ensure that tools were used properly.

2.        <u>Inability to Use Hydraulic Spike Puller</u>

Mr. Lydick also opines that the absence of a foreman "led to [Plaintiff] not staging his truck into a position in which the hydraulic tool [*i.e.*, a hydraulic spike puller] could reach the work area." (ECF No. 46-1 at 11.) The Court concludes that this opinion is not relevant and is therefore inadmissible.

As further explained in the Court's simultaneously-issued order on summary judgment, Defendant has a legal duty to provide a safe place to work, and tools and equipment that are "reasonably safe and suitable," although they need not be necessarily perfect." *Williams v. Ne. Ill. Regional Commuter R.R. Corp.*, 2002 WL 1433724, at *9 (N.D. Ill. June 28, 2002) (quoting *Atlantic Coast Line R.R. v. Dixon*, 189 F.2d 525, 527 (5th Cir. 1951)). Defendant is not, however, required to provide the "latest, best, and safest" tools or equipment. *See Dixon*, 189 F.2d at 527; *accord Stillman v. Norfolk & W. Ry.*, 811 F.2d 834 (4th Cir. 1987); *Seeberger v. Burlington N. R.R. Co.*, 982 P.2d 1149, 1154 (Wash. 1999) ("it is well settled that 'in FELA cases an employer is neither required to furnish the employee with the latest, best, or most perfect appliance with which to work, nor to discard standard appliances already in use that are reasonably safe and suitable" (collecting cases)). The relevant question is not "whether the existence of an alternative tool created a duty to provide it, but whether the tool actually used was reasonably safe." *Id.*

It is undisputed here that the claw bar was reasonably safe, if used properly.

8

Mr. Lydick testified that in his own supervision of employees he believed claw bars could be used reasonably safely to remove spikes, that "every Class I railroad permits the use of claw bars to remove spikes," that it "is a reasonably safe tool to use to remove spikes," and that the claw bar used by Plaintiff "was reasonably safe and not defective." (ECF No. 45-2 at 2–3.)

Given this concession that the claw bar, in and of itself, was a reasonably safe tool for the job, the question of whether a hydraulic spike puller might, could, or should have been used becomes irrelevant, as does any question of whether the hydraulic tool would have reduced the risks to Plaintiff. Since properly using the claw bar would have been reasonably safe, Plaintiff cannot prove negligence by arguing that the job could have been made *more* safe by using some other tool or equipment.

Accordingly, Defendant's Motion is granted to the extent that Mr. Lydick is precluded from offering any testimony that relates only to the possible use of a hydraulic spike puller instead of the claw bar, and he is therefore precluded from opining that the lack of a foreman led Plaintiff to stage his truck in a location where he could not use the hydraulic spike puller.

### 3. Whether the Absence of a Foreman Was "Unprecedented" or Contrary to BNSF's Policies

Mr. Lydick opines that BNSF "was not in compliance with [its] policies and standards by not having a BNSF Foreman present at the job site." (ECF No. 46-1 at 11.) Initially, Defendant argues that it is contrary to the evidence to describe the lack of a foreman as "unprecedented." (ECF No. 46 at 5.) The Court views this argument as semantic. If Mr. Lydick testifies at trial, that the lack of a foreman was "unprecedented,"

Defense counsel may seek to attack his choice of words.  The substance of this opinion, however, was disclosed by Mr. Lydick in less categorical terms than Defendant's argument suggests:  the "lack of a foreman *or track inspector* supervising the work appears *nearly* unprecedented . . . *on jobs such as this*."  (ECF No. 46-1 at 11.)  Mr. Lydick is not foreclosed from offering this opinion, and any challenge to it, including exploring what he means by "nearly" unprecedented, or "jobs such as this," is an issue left to cross-examination, at most bearing on the weight of his opinions, not their admissibility.

Defendant does not make other specific arguments for excluding Mr. Lydick's opinion that BNSF violated its policies and standards by not having a foreman present.  (*See* ECF No. 46 at 5.)  The Court finds this portion of "Opinion 2" is admissible under Rule 702 based on Mr. Lydick's experience, his review of Defendant's policies, and his review of the factual record.  (*See* ECF No. 46-1 at 11.)  To the extent Defendant elsewhere argues that its rules do not strictly require a foreman at every job site and at all times (*see* ECF No. 45 at 10; ECF No. 45-2 at 10), conflicting evidence on this point, or conflicting interpretations of how Defendant's policies applied to the facts of this case, present a disputed issue appropriate for presentation to the jury.  Presumably that would include contrary opinions from Defendant's expert, Mr. Palacios.  Again, this confirms that Defendant's arguments at most bear on the weight and credibility of Mr. Lydick's opinions, not their admissibility.[2]

---

[2] Defendant does not argue that any of Mr. Lydick's opinions, including whether Defendant complied with its own policies, should be excluded because they address matters the jury can understand without expert testimony, rendering the testimony unhelpful to the jury. Moreover, it appears the parties anticipate a "battle of the experts" between Mr. Lydick and Mr.

Accordingly, Defendant's Motion is denied to the extent it seeks to exclude Mr. Lydick's opinion(s) that the absence of a foreman was unprecedented (or words to that effect) and/or was contrary to Defendant's policies and standards.

**C.     Opinion 3**

Mr. Lydick's "Opinion 3" states that "a proper job briefing was not done" and that the job was not properly planned. (ECF No. 46-1 at 11.) However, his report and Plaintiff's Response brief both argue this is relevant *only* as to whether Plaintiff might have used a hydraulic spike puller. (ECF No. 46-1 at 11; ECF No. 56 at 22–23.) As explained above, this issue does not raise a viable claim of negligence, since it is undisputed that the claw bar was a reasonably safe tool. *See* Part III.2.b., *supra.* Plaintiff therefore has not shown how any testimony or opinion related to the adequacy of the job briefing and job planning would be relevant, and Defendant's Motion is granted to exclude Mr. Lydick's testimony on this issue.

**D.     Opinion 4 (Improper Training on Claw Bar)**

Mr. Lydick's "Opinion 4" is that "Based on [Plaintiff's] testimony, BNSF failed to properly instruct, educate, and train [Plaintiff] on the proper use of the claw bar." (ECF No. 46-1 at 12.) Consistent with the analysis in Part III.A.1., above, and in the Court's summary judgment Order, the Court concludes that this opinion relates to an issue that is relevant, disputed, and raises a viable negligence theory for trial, namely, why Plaintiff used the claw bar in a manner the parties agree was contrary to Defendant's written safety policy.

---

Palacios on some of these issues.  The Court does not address this issue at this time but may restrict testimony at trial if it is unhelpful, irrelevant, a waste of time, or otherwise inadmissible.

11

Defendant argues that Mr. Lydick "identifies no facts supporting this opinion" regarding training, and that it should therefore be excluded. (ECF No. 46 at 8.) This is incorrect. On the face of Mr. Lydick's written report, he explains that his opinion is "[b]ased on Plaintiff's testimony," reflecting that Plaintiff "received the majority of his training on the job . . . but no specific training for using a claw bar," and, that he used the claw bar "in the same manner as" others in his department. (ECF No. 46-1 at 12.)

In addition, the evidence reviewed by Mr. Lydick includes Defendant's rule on how to use the claw bar, which instructs workers to "[s]tand beside the clawbar" and to use "short, firm thrusts and watch for . . . loose spikes." (ECF No. 45-1 at 36.) Plaintiff testified that he used the tool contrary to this policy, with one long pull, using "everything he had," and evidently standing behind the bar, not beside it. (*See id.* at 33.) Plaintiff acknowledges did not follow this rule, but testified that "there isn't one guy on this railroad that does." (*Id.* at 33.) Although Mr. Lydick's report does not detail each piece of testimony, it indicates that he reviewed the written safety policies and that his opinion is based on Plaintiff's testimony. In the context of this case, and given Mr. Lydick's non-scientific, experience-based expertise, this reflects a sufficient and reliable basis and methodology for his opinions to be admissible under Rule 702.

Defendant also argues that because Plaintiff himself felt that his training had been adequate, and felt he could perform his job safely, Mr. Lydick's opinions on training are inadmissible. (ECF No. 46 at 8; ECF No. 46-3 at 4–6.) The Court again disagrees. The fact that Plaintiff felt his training was adequate might reflect only that he had no basis of comparison or "didn't know better." His deposition testimony on this issue neither makes it uncontested nor renders Mr. Lydick's opinion inadmissible.

12

Defendant emphasizes lines from Mr. Lydick's deposition where he answered a question about why he believes Plaintiff was inadequately trained, saying "[b]ecause of the way he was using the claw bar and—and based on the fact that you had other tool-involved injuries," specifically an injury suffered by one of Plaintiff's co-workers. (ECF No. 46 at 8; ECF No. 46-2 at 4.) Based on this snippit, Defendant tries to argue these are the only bases for Mr. Lydick's opinion. Defendant's argument mischaracterizes the factual record as a whole, seeking to convert a two-word deposition question ("Why not?") into something akin to a contention interrogatory demanding that Mr. Lydick enumerate each and every basis for his opinion. This argument fails.

Both Mr. Lydick's report and his deposition testimony as a whole explain that his opinion is based on Plaintiff's testimony to the effect that he did not receive specific training for the claw bar and that other employees used it in the same way he did. In portions of his deposition ignored by Defendant, Mr. Lydick summarized his view that adequate training would have included demonstration by a knowledgeable person and testing on proper use of the claw bar. (ECF No. 46-2 at 5; ECF No. 53-5 at 1.) He also emphasized the relationship between allegedly insufficient training and the lack of supervision by a foreman at the job site. (ECF No. 46-2 at 5.) He explained that, based on his experience, improper training is in general "a big factor" in employees' failure to follow safety rules. (ECF No. 56-1 at 54–55.) Defendant does not account for these portions of the record, which reveal an adequate basis for Mr. Lydick's opinions.

Likewise, Defendant points to a single line of deposition testimony in which Mr. Lydick stated he "never saw any documentation that his training was appropriate." (ECF No. 46 at 9.) Defendant then lists training produced in discovery and argues that

13

because Mr. Lydick "gives no indication that he has looked at any of these materials," his opinion is inadmissible.[3] (*Id.*)  Again, Defendant misconstrues the record by omission.  Mr. Lydick's written disclosures and other portions of his deposition testimony reflect that he "looked through" various training materials but "didn't see anything specific to a claw bar in [Plaintiff's] training list."  (*See* ECF No. 56-1 at 61.)  He also explains his opinion that the "on the job" training Plaintiff received was inadequate, and should instead have been conducted by a certified trainer, and "more specific and more professionally done."  (*Id*. at 62–63.)  In light of Mr. Lydick's experience, his review of at least some written training materials, and his reliance on Plaintiff's testimony about the training he actually received, he has an adequate basis and reliable method to offer his opinions regarding Plaintiff's training.  Once again, to the extent Defendant contests Mr. Lydick's opinion or argues that he overlooked additional training materials or other evidence, those arguments bear on the weight and credibility of the opinions, not their admissibility.

Defendant's motion therefore is denied as to this point, and Mr. Lydick may testify consistent with his "Opinion 4" regarding the adequacy of the training and supervision Plaintiff received on use of the claw bar.

E. **Opinions 5 & 8 (Crew Size and Plaintiff's Compliance With BNSF Policy)**

In response to Defendant's argument that these opinions were contrary to the factual record and to Mr. Lydick's own deposition testimony (*see* ECF No. 46 at 9, 10),

---

[3] Plaintiff separately moves to strike the affidavit submitted by Defendant's attorney, Mr. Gatewood, describing the materials produced in discovery.  (*See* ECF No. 46-8.)  The Court sees nothing improper about using an attorney affidavit to inform the Court of what documents have been produced in discovery in this fashion, so Plaintiff's motion (ECF No. 55) is denied.

Plaintiff "withdraws" these opinions (ECF No. 56 at 24). Defendant's motion is therefore granted on these points. The Court will enforce Plaintiff's "withdrawal" to preclude Mr. Lydick from offering the testimony and opinions disclosed in "Opinion 5" and "Opinion 8," pertaining to whether Defendant used too small of a work crew and whether Plaintiff complied with Defendant's operating rules. (*See* ECF No. 46-1 at 12, 13.)[4]

**F.      Opinions 6 & 7 (Defendant's Post-Accident Analysis and Investigation)**

Mr. Lydick's "Opinion 6" and "Opinion 7" state his view that "BNSF failed to conduct a post-accident root cause analysis" and "fail[ed] to properly investigate the accident . . . once it was reported." (ECF No. 46-1 at 12.) The Court agrees with Defendant that these opinions are not relevant to any material issue in this case. (*See* ECF No. 46 at 10.) Commendably, Plaintiff "agrees that the failure to investigate the accident had nothing to do with causing Miller's claimed injuries." (ECF No. 56 at 24.) Confusingly, Plaintiff argues that despite this concession, "[t]he jury should know that there was an insufficient investigation." (*Id.*) The Federal Rules of Evidence say otherwise. Given Plaintiff's concession that this evidence is irrelevant, it is inadmissible and would only be a waste of time. *See* Fed. R. Evid. 401–03. Defendant's Motion is therefore granted to exclude "Opinion 6" and "Opinion 7."

**G.      Lydick Declaration**

Finally, in addition to his written expert report, Mr. Lydick prepared and signed a written Declaration, dated November 30, 2016. Copies of this Declaration were filed by

---

[4] The Court makes no ruling at this time on the extent to which Mr. Lydick may be cross-examined on these issues, including the "withdrawal" of his previously-disclosed opinions, or on the extent to which such examination might "open the door" for him to explain these withdrawn opinions.

15

Plaintiff the same day it was signed, as exhibits in opposition to both Defendant's Motion to Strike Mr. Lydick's testimony and Defendant's Motion for Summary Judgment. (ECF Nos. 53-5, 56-4.)

Noting the Declaration "simply parrot[s] the opinions contained in his report and deposition," Defendant argues the opinions in the Declaration "are conclusory and not sufficiently based on facts in the record" and should be stricken for essentially the same reasons as the opinions disclosed in Mr. Lydick's report. (*See* ECF No. 57 at 2.) Having reviewed the Declaration, the Court agrees that it mostly re-states or re-phrases opinions disclosed in the prior written report and, to some extent, further details Mr. Lydick's bases for those opinions. (*See generally* ECF Nos. 46-1 & 56-4.) The Declaration does not include new or distinct opinions that require any separate analysis here. The Court's rulings and analysis above apply equally to Mr. Lydick's opinions regardless of whether set out in his report or his Declaration, and his trial testimony will be limited accordingly.[5]

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendant, BNSF Railway Company's Motion to Strike the Expert Testimony of Joe Lydick (ECF No. 46) is GRANTED IN PART AND DENIED IN PART, as explained herein, and again summarized below, only for ease of reference:

   a. As to "Opinion 1," Defendant's Motion is GRANTED IN PART, as

---

[5] Consistent arguing the Declaration "simply parrot[s]" Mr. Lydick's previous disclosures and deposition testimony, Defendant does not argue that its contents should be excluded as an improper disclosure under Federal Rule of Civil Procedure 37(c)(1).

explained herein, and "Opinion 1" is admissible only to the extent supported and explained by other admissible opinions and testimony at trial;

    b.    As to "Opinion 2":

        i.    Defendant's Motion is GRANTED IN PART, as explained herein, to the extent that Mr. Lydick is PRECLUDED from offering any testimony or opinions relevant only to the possible use of a hydraulic spike puller instead of a claw bar;

        ii.    Defendant's Motion is DENIED IN PART, as explained herein, to the extent that Mr. Lydick *may* offer testimony and opinions at trial relevant to whether Plaintiff was adequately trained and supervised on use of the claw bar;

    c.    As to "Opinion 3," Defendant's Motion is GRANTED, as explained herein;

    d.    As to "Opinion 4," Defendant's Motion is DENIED, as explained herein;

    e.    As to "Opinion 5," Defendant's Motion is GRANTED, as explained herein;

    f.    As to "Opinion 6," Defendant's Motion is GRANTED, as explained herein;

    g.    As to "Opinion 7," Defendant's Motion is GRANTED, as explained herein;

    h.    As to "Opinion 8," Defendant's Motion is GRANTED, as explained herein.

2.    Plaintiff's Opposed Motion to Strike Exhibit 8 to BNSF Railway Company's Motion to Strike Joe Lydick (ECF No. 55) is DENIED.

Dated this 9th day of May, 2017.

BY THE COURT:

William J. Martinez
United States District Judge