IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 15-cv-2268-WJM-NYW

GEORGE MILLER,

 Plaintiff,

v.

BNSF RAILWAY COMPANY, a Delaware Corporation,

 Defendant.

---

**ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

In this case brought pursuant to the Federal Employer's Liability Act, 45 U.S.C. §§ 51 *et seq.* ("FELA"), Plaintiff George Miller ("Plaintiff") seeks to recover from Defendant BNSF Railway Company ("Defendant" or "BNSF") for alleged negligence leading Plaintiff to be injured while employed by BNSF. Now before the Court is Defendant's Motion For Summary Judgment. (ECF No. 45.) As explained below, while Plaintiff brings a single negligence claim, several of his distinct theories of negligence are unsupported by the evidence and/or foreclosed as a matter of law, and Defendant's Motion is therefore granted in part.

## I. BACKGROUND

The following facts are undisputed unless attributed otherwise. Plaintiff was employed by Defendant beginning May 16, 2011, and worked in the "Maintenance of Way Department," which maintains Defendant's railroad tracks. (ECF No. 45 at 2, ¶ 1.) He worked as a section laborer, and eventually as a truck driver. (*Id.* ¶ 3.) As a truck

driver, he had the same responsibilities as a laborer when on a jobsite. (*Id.*) In both positions, his work included removing railroad spikes, which he did frequently, depending on the specific job. (*Id.* at 3, ¶ 4.)

On October 24, 2012, Plaintiff was tasked to remove several railroad spikes at a location in Golden, Colorado, using a tool called a "claw bar." (*See id.* at 4, ¶¶ 6, 9, 10; *see also* ECF No. 61 at 5.)[1]  After Plaintiff kicked the bar onto one spike, and after feeling some tension on it, he then "pulled with everything he had" on the bar, "right off the get-go." (ECF No. 45 at 3, ¶ 6; ECF No. 53 at 11; ECF No. 45-1 at 27–28.)[2]  The spike came loose and the claw bar hit Plaintiff in the shoulder. (ECF No. 45 at 3, ¶ 6; ECF No. 53 at 11; *see also* ECF No. 61 at 5–6.)  In his deposition, Plaintiff testified that the spike "fell out" and was "too easy" to remove. (ECF No. 45-1 at 31.)

This lawsuit followed, in which Plaintiff alleges that the injury to his shoulder and resulting damages are the result of Defendant's negligence.

## II.  LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994). Whether there is a genuine dispute

---

[1] The Proposed Final Pretrial Order, as submitted by the parties, identifies the date as October 24, 2013. (ECF Nos. 59, 61.) Although this Order is the "controlling document for trial," and "requires careful attention and review by the parties and their attorneys," *Wilson v. Muckala*, 3030 F.3d 1207, 1215 (10th Cir. 2002), it is evident from record as a whole that this submission was in error and the correct year is 2012.

[2] All citations to docketed materials are to the page numbers found in the ECF header, which frequently differ from the documents' internal pagination.

as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or, conversely, is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–49 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000).

A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson*, 477 U.S. at 248. The Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

### III.  ANALYSIS

#### A.  Evidentiary Issues

Initially, Defendant argues that in its summary judgment analysis the Court should not consider any of the anticipated testimony or opinions of Plaintiff's expert, Mr. Joe Lydick. (ECF No. 58 at 12–13.)

Defendant first argues that the copy of Mr. Lydick's written expert report docketed by Plaintiff (ECF No. 53-1) is "not authenticated and is therefore not admissible." (*Id.* at 12.) This argument mis-apprehends the relevant considerations at the summary judgment phase. In opposing summary judgment, a party "may object that the material cited to support or a dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). However, "[a]t the summary judgment phase, evidence need not be submitted in a form that would be admissible at trial," only "the content or substance of the evidence must be admissible." *Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006). It is only

3

necessary for the party submitting the evidence to show "that it will be possible to put the information, the substance or content of the evidence, into an admissible form." *Brown v. Perez*, 835 F.3d 1223, 1232 (10th Cir. 2016) (citation and internal quotation marks omitted).

While it is indeed strange that Plaintiff's attorney has docketed an unsigned copy of Mr. Lydick's report, the question is not whether the report itself is admissible but whether its contents can be presented in an admissible form, namely, through Mr. Lydick's in-court testimony. *See, e.g.*, *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 539 (4th Cir. 2015) ("the admissibility of the reports themselves is immaterial because . . . the experts . . . would testify to the matters set forth in [their respective] report[s]." (brackets in original)). Defendant's objection to the docketed copy of his report has no bearing on whether Mr. Lydick can testify at trial, or whether his anticipated testimony raises genuine issues of fact precluding summary judgment.[3]

Second, Defendant relies on the arguments in its separate Motion to Strike Mr. Lydick's testimony under Federal Rule of Evidence 702, which the Court has ruled on by separate order. (ECF No. 91.) Although the Court has excluded some of Mr.

---

[3] The authorities cited by Defendant are neither controlling nor on point, since these cases address the authenticity of documentary evidence, that is, documents that are themselves proposed to be put into evidence, and/or rely on affidavit procedures that are no longer required under Rule 56. *See, e.g.*, *Bias v. Moynihan*, 508 F.3d 1212, 1224 (9th Cir. 2007) (addressing documentary evidence); *Bell v. City of Topeka*, 496 F. Supp. 2d 1182, 1184 (D. Kan. 2007) (relying on analysis in *In re Harris*, 209 B.R. 990, 996 (B.A.P. 10th Cir. 1997) regarding "documentary evidence"); Fed. R. Civ. P. 56, Advisory Committee Notes to 2010 Amendment ("The requirement that a sworn or certified copy of a paper referred to in an affidavit or declaration is omitted as unnecessary given the requirement in subdivision (c)(1)(A) that a statement or dispute of fact be supported by materials in the record. A formal affidavit is no longer required.").

Lydick's testimony, this is primarily on the basis that his opinions are irrelevant because they relate only to factual theories of negligence that are not viable for reasons explained below. (*See id.* at 8–9.) *In* other words, Mr. Lydick's testimony is primarily limited not because it is intrinsically inadmissible under Rule 702, but as a consequence of the summary judgment analysis in this Order. Given this interrelationship of the issues, the Court considers Mr. Lydick's testimony here.

**B.     FELA Background Law**

Under FELA, Railroads are liable to their employees for injuries sustained in the course of employment as a result of the railroad's negligence. FELA provides:

> Every common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier.

45 U.S.C. § 51.

"FELA is a general negligence statute that 'neither prohibits nor requires specific conduct by a railroad.'" *Wright v. BNSF Ry. Co.*, 177 F.3d 1310, 1314 (N.D. Okla. 2016) (quoting *Waymire v. Norfolk & W. Ry. Co.*, 218 F.3d 773, 775 (7th Cir. 2000)). To establish a prima facie case under FELA, the plaintiff must prove that: (1) his injuries occurred within the scope of his employment; (2) he was employed as part of the railroad's interstate transportation business; (3) the railroad was negligent; and (4) the railroad's negligence at least in part caused the injury for which the employee seeks compensation. *Volner v. Union Pac. R. Co.*, 509 F. App'x. 706, 708 (10th Cir. 2013) (citing *Van Gorder v. Grand Trunk W. R.R.*, 509 F.3d 265, 269 (6th Cir. 2007)); *see also* 5-89 L. Sand *et al.*, *Modern Federal Jury Instructions—Civil* ¶ 89.02 (cited with approval

in *CSX Transp., Inc. v. McBride*, 564 U.S. 685 (2011)).

The issues contested here relate to whether Defendant was negligent and, if so, whether such negligence played any part in causing Plaintiff's injury.[4] To prevail in establishing negligence—the third element—Plaintiff has the burden to prove the common law elements of duty, breach, foreseeability, and causation. *Volner*, 509 F. App'x at 708 (citing *Hardyman v. Norfolk & W. Ry.* 243 F.3d 255, 258 (6th Cir. 2001)), *Huffman v. Union Pac. R.R.*, 675 F.3d 412, 418 (5th Cir. 2012) and *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 540 (1994)). "It is not enough that [Plaintiff] was injured"; rather, the Defendant "must actually be negligent for there to be liability under FELA." *Volner*, 509 F. App'x at 708 (citing *Gottshall*, 512 U.S. at 543 ("FELA does not make the employer the insurer of the safety of his employees . . . . The basis of his liability is his negligence, not the fact that injuries occur.")).

A "relaxed" standard of legal causation applies to FELA claims, under which plaintiffs need only demonstrate that the railroad's negligence played some part, "no matter how small," in bringing about the injury. *McBride*, 564 U.S. at 698–99. Put another way, "the FELA causation standard is distinct from the usual proximate cause standard." *Id.* at 698 (internal quotation marks omitted). Under this standard, "the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." *Id.* at 692 (quoting *Rogers v. Missouri Pac. R.*

---

[4] The "three basic prerequisites" for FELA liability, encompassed in the first two elements as summarized above, are that Defendant was "(1) a common carrier, (2) employing the plaintiff, (3) in furtherance of interstate commerce." *See Smith v. Rail Link, Inc.*, 697 F.3d 1304, 1307 (10th Cir. 2012). These issues are undisputed here.

*Co.*, 352 U.S. 500, 506 (1957)). However, this relaxed standard of legal causation "does not affect [Plaintiff's] obligation to prove that [Defendant] was in fact negligent." *Volner*, 509 F. App'x at 708 (quoting *Van Gorder,* 509 F.3d at 269) (internal quotation marks omitted).

### C. Plaintiff's Negligence Theories

There is no dispute that a railroad has "a duty to use reasonable care in furnishing its employees with a safe place to work." *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 558 (1987); *Missouri-Kansas-Texas Ry. Co. v. Hearson*, 422 F.2d 1037, 1040 (10th Cir. 1970) (same). Likewise, a railroad has a duty "to provide adequate and reasonably safe tools and equipment." *Thornton v. Atchison, Topeka & Santa Fe Ry. Co.*, 11 F. Supp. 2d 1311, 1313 (D.N.M. 1997) (citing *Ferguson v. Moore-McCormack Lines, Inc.*, 352 U.S. 521, 522 (1957)).

Here, Plaintiff pursues a single claim of negligence but advances a variety of specific theories as to how exactly Defendant was allegedly negligent. As set out in the Final Pretrial Order, these include: "[1] not providing a safe place to work, [2] not providing Plaintiff with the proper tools and equipment, [3] not providing an adequate crew, [4] not having a foreman at the jobsite, [5] not having a track inspector at the jobsite, [6] not providing Plaintiff with proper oversite [*sic*], [7] not enforcing its policies, and [8] not providing the crew reasonable means to get track time." (ECF No. 61 at 2.)

As a practical matter, the Court observes that all (or perhaps all but one, as analyzed below) of Plaintiff's articulated negligence theories rest on one or both of two overarching claims of how his injury resulted from Defendant's alleged negligence. First, Plaintiff argues that rather than using the manual claw bar to remove the railroad

spike, he should have been able to use a hydraulic spike puller instead, and that using the hydraulic spike puller would have prevented his injury. Second, while acknowledging he used the claw bar in way that was contrary to Defendant's written safety policy, Plaintiff argues he did so because of Defendant's allegedly negligent training and supervision, causing his injury. Given the common issues raised by these two overarching theories, the Court addresses them first, before addressing the one claim (inadequate crew size) that is arguably not resolved by that analysis.

        1.      <u>Alternative Tool / Hydraulic Spike Puller</u>

Overarching many of his more specific claims, Plaintiff argues that Defendant should have ensured that a hydraulic spike puller was available for him to use instead of the claw bar. (*See, e.g.*, ECF No. 53 at 20–22, 28–30.) More specifically, Plaintiff claims that although there was a hydraulic spike puller on his truck, he had to use the claw bar because of various acts or omissions by Defendant that required him to stage his truck too far away from the spikes to be pulled, so the hydraulic lines could not reach them. This broad claim underlies many of Plaintiff's more specific allegations of how Defendant was negligent. (*See e.g.,* ECF No. 61 at 5 ("[T]he crew could not use a hydraulic spike puller because they could not get permission from dispatch to be on the track. . . . The crew could have gotten track time if there was a foreman at the worksite.").)

Defendant acknowledges it had a duty to provide Plaintiff with a reasonably safe tool, but argues that the evidence shows that the claw bar itself was reasonably safe. Defendant argues that as a matter of law it was "not required to furnish [Plaintiff] with the latest, best, or more perfect appliances with which to work," and that "the relevant

8

inquiry [is] whether the Railroad . . . exercised reasonable care, not whether the procedures used . . . could have been made safer." (ECF No. 45 at 7 (quoting *Atl. Coast Line R.R. Co. v. Dixon*, 189 F.2d 525, 527 (5th Cir. 1951) and *Stillman v. Norfolk & W. Ry. Co.*, 811 F.2d 834, 838 (4th Cir. 1987)) (internal quotation marks omitted).

Initially, the Court finds there is no genuine dispute that the claw bar was reasonably safe, if used properly. Plaintiff's expert, Mr. Lydick, testified that during his career supervising railroad employees, he believed claw bars could be used reasonably safely to remove spikes, that "every Class I railroad permits the use of claw bars to remove spikes," that it "is a reasonably safe tool to use to remove spikes," and that the claw bar used by Plaintiff "was reasonably safe and not defective." (ECF No. 45-2 at 2–3.) Plaintiff himself testified that he felt he could use the claw bar to safely pull a spike, and that he had done this many times safely in the past. (ECF No. 45-1 at 13–14, 18.)

Plaintiff's Response cites no contrary evidence showing the claw bar was unsafe either in general or in this specific circumstance, but argues that "for the claw bar to be safe, there must be proper training and . . . oversight." (ECF No. 53 at 24.) Plaintiff only cites testimony in which Plaintiff himself described the claw bar as "a dinosaur," and "usually used as a last resort," but, in the same passage, Plaintiff concedes there "are circumstances where [the claw bar] has to be used," and that under those circumstances, he believed he could use it safely. (ECF No. 53-4 at 9.) At most, this testimony reflects a preference for using newer, easier, and more efficient tools. Plaintiff offers no evidence which rebuts Defendant's contention that the claw bar is a reasonably safe tool when used correctly. Therefore no genuine dispute remains on

9

this issue, on which Defendant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).

Since, as a matter of law, Defendant *did* provide a reasonably safe tool, namely, the claw bar, then also as a matter of law, Defendant had no further duty to provide a safer or more perfect tool. Plaintiff argues throughout his Response Brief that hydraulic equipment "should have been used," but nowhere responds to Defendant's argument on this point, including Defendant's citation to *Dixon* and to *Stillman*. The Court thus finds that Plaintiff has conceded this legal issue at summary judgment.

Moreover, the Court's own research confirms that although *Dixon* and *Stillman* are somewhat dated, and are not Tenth Circuit precedents, they correctly state the law on this point. "[I]t is well settled that 'in FELA cases an employer is neither required to furnish the employee with the latest, best, or most perfect appliance with which to work, nor to discard standard appliances already in use that are reasonably safe and suitable.'" *Seeberger v. Burlington N. R.R. Co.*, 982 P.2d 1149, 1154 (Wash. 1999) (quoting *Soto v. Southern Pac. Transp. Co.*, 514 F. Supp. 1, 4 (W.D. Tex. 1979) and collecting additional cases). Numerous more recent court decision have affirmed this principle, articulating that the relevant question is not "whether the existence of an alternative tool created a duty to provide it, but whether the tool actually used was reasonably safe." *Seeberger*, 982 P.2d at 1149; *see also, e.g.*, *Sink v. Norfolk & W. Ry. Co.*, 912 F.2d 464 (4th Cir. 1990) (table), 1990 WL 125535, at *2 ("A railroad has no duty to provide the latest, best, or most perfect appliances for its employees to perform their tasks; instead, the question is whether the means used are reasonably safe."); *Soto v. S. Pac. Transp. Co.*, 644 F.2d 1147, 1148 (5th Cir. 1981) ("That there were

other, arguably more advanced, methods in use by the defendant . . . is of no significance where the method in use by [the plaintiff] was not an inherently unsafe one. The task at which [the plaintiff] was injured was one that could be safely done by the method which he was told to use and was using."); *Wright*, 77 F.3d at 1316 ("[P]laintiff makes no allegation that using the five-foot bar was unsafe, but only argues that there were easier, better methods of completing the task. This alone cannot establish negligence under FELA." (collecting cases)).[5]

Since Defendant had no legal duty to provide a tool other than the claw bar, Plaintiff's negligence claim fails as a matter of law to the extent it turns on any claim that Defendant should have ensured he could instead use the hydraulic spike puller. Defendant cannot be held liable for any conduct that Plaintiff claims contributed to his injury only as a consequence of Defendant's allegedly preventing the use of the hydraulic spike puller. As a consequence of this legal conclusion, many of Plaintiff's specific theories of negligence fail as a matter of law, and therefore cannot be

---

[5] *Accord Keller v. Norfolk S. Ry. Co.,* 2013 WL 322176, at *3 (N.D. Ohio Jan. 28, 2013) ("Under the FELA, the relevant inquiry is whether Norfolk Southern exercised reasonable care, not whether the procedures [or tools] used by the Railroad could have been made safer." (citing *Dixon* and *Stillman*)); *Uhl v. CSX Transp.*, 2009 WL 1749372, at *7 (S.D. W.Va. June 18, 2009) ("when it is determined that the railroad exercised reasonable care," then "testimony regarding safer alternatives [is] properly excluded"); *Williams v. Ne. Ill. Regional Commuter R.R. Corp.*, 2002 WL 1433724, at *9 (N.D. Ill. June 28, 2002) ("The tools provided . . . must be 'reasonably safe and suitable,' although they need not be necessarily perfect."); *Seymour v. Ill. Cent. R. Co.*, 25 F. Supp. 2d 734, 738 (S.D. Miss. 1997) ("[T]he employer is not required to furnish the employee the latest, best, or most perfect appliances with which to work . . . provided those in use are reasonably safe and suitable.") *aff'd,* 154 F.3d 418 (5th Cir. 1998); *Siler v. Nat'l R.R. Passenger Corp.*, 1996 WL 432395, at *3 (N.D. Ill. July 30, 1996)); *McKennon v. CSX Transp., Inc.*, 897 F. Supp. 1024, 1027 (M.D. Tenn. 1995) ("The fact that there may have been an automated, or safer method, of work does not automatically render the chosen method unsafe or negligent for purposes of FELA. Under FELA, the proper inquiry is whether the method prescribed by the employer was reasonably safe, not whether the employer could have employed a safer alternative method for performing the task."), *aff'd*, 56 F.3d 64 (6th Cir. 1995).

presented to a jury. Defendant cannot be held liable on any of the following theories of negligence advanced by Plaintiff:

- for failing to conduct a proper job briefing, since the only way in which Plaintiff claims this gave rise to his injury is because "there was no discussion . . . about the steps that needed to be taken to ensure that a hydraulic spine [*sic*] remover could have been used" (*see* ECF No. 53 at 28–29);

- for any actions claimed to have prevented Plaintiff and his work crew from getting "track time" or "tracking time," since the only alleged connection of this theory to Plaintiff's injury is that Plaintiff could not stage his truck close enough to use the hydraulic spike puller (*see, e.g.*, ECF No. 53 at 20–21; ECF No. 61 at 5);

- for any alleged confusion or negligence as to designating an "employee in charge," since again Plaintiff's only claim of how this caused his injury is in "not getting permission to drive the truck on the track," and therefore being unable to use the hydraulic spike puller (ECF No. 53 at 20);

- for failing to have a foreman or supervisor at the worksite at the time of injury, or to otherwise provide "oversight," to the extent Plaintiff argues that a foreman or other supervisor would have arranged for "track time" or otherwise ensured that the truck was staged in another location or for the hydraulic spike puller to be used (*see id.* at 26–27);

- for any general claim that Defendant breached its duty to provide reasonably safe tools by not providing for use of the hydraulic spike puller (*see, e.g.*, *id.* at 21); or,

- for any other alleged conduct which Plaintiff claims caused his injury only as a

consequence of being unable to use the hydraulic spike puller.

Consistent with the foregoing analysis, Defendant's Motion is granted to the extent that Defendant is entitled to judgment as a matter of law and cannot be held liable on any theories of negligence depending on claims that Defendant had a duty to provide for use of a hydraulic spike puller and/or that Plaintiff's injury would have been avoided by use of the hydraulic spike puller. Accordingly, Plaintiff is barred from presenting such theories of negligence to the jury.

  2. <u>Theories Related to Improper Use of Claw Bar</u>

In contrast, Plaintiff's negligence claim survives to the extent that he argues he was injured as a result of using the claw bar improperly, and that this improper use was a result of Defendant's negligence in inadequately training and/or supervising him on the proper use of the claw bar. Initially, the Court concludes that this is a viable theory of negligence. Although Plaintiff's pleadings did not use the words "failure to train," or "failure to supervise," the Court finds that in the circumstances of this case Plaintiff can fairly argue for liability on this basis under the general theories that Defendant breached its duty to provide a reasonably safe place to work and its duty to provide reasonably safe tools and equipment. (*See* ECF No. 61 at 2.)[6]

The evidence relevant to these claims shows that genuine issues of material fact preclude summary judgment. Genuine disputes of material fact remain as to whether Plaintiff was adequately trained in how to use the claw bar, whether he was adequately

---

[6] Defendant also treats these as properly pending negligence claims and issues, since its Motion and Reply directly argue the facts and evidence regarding whether Plaintiff's training and supervision were adequate and whether better training or supervision would have prevented Plaintiff's injury. (*See* ECF No. 45 at 6, 9–10.)

13

supervised, and whether greater training and/or supervision would have prevented his injury.

Regarding training, the evidence raises a genuine dispute whether Plaintiff was adequately trained on safe use of the claw bar. Defendant's written safety rule describing proper use of the claw bar provides that a worker should "[s]tand beside the claw bar" and should use "short, firm thrusts and watch for throat-cut or loose spikes." (ECF No. 45-1 at 36.) Plaintiff admits he did not follow this rule, in that he evidently stood directly behind the bar, and pulled on it with "everything he had," instead of with short "thrusts." (*Id.* at 33.) Since the spike immediately came free, a fair inference may be drawn that he also did not check whether it was loose before pulling. However, Plaintiff also testified that "there isn't one guy on this railroad" that uses the claw bar consistent with the written rule. (*Id.*) Viewed in the light most favorable to Plaintiff, this evidence creates a reasonable inference that Plaintiff was not adequately trained on how to safely use the claw bar. Likewise, Mr. Lydick's expert opinion is that Plaintiff's training was insufficient, and the Court has concluded this testimony is admissible. (*See* ECF No. 46-1 at 12.) This evidence creates a genuine dispute as to whether Plaintiff was properly trained on the claw bar, including following Defendant's written safety rule.

Defendant relies heavily on Plaintiff's own testimony stating that he felt he was properly trained and could safely use the claw bar. (*See* ECF No. 45 at 6.) The Court finds that this issue remains in genuine dispute.[7] Viewing the evidence in the light most

---

[7] Although Defendant does not argue in exactly these terms, its arguments suggest that Plaintiff's own testimony that he believed he had been adequately trained and that he would not

favorable to Plaintiff, a jury might reasonably infer that because Plaintiff was unaware of the written claw bar rule, he probably was not properly trained on it. The jury might likewise infer that Plaintiff believed he had been adequately trained because he "didn't know better," or was unaware there were safer ways to use the tool. Such inferences would be consistent with Mr. Lydick's opinion that Plaintiff was not adequately trained, notwithstanding Plaintiff's own testimony to the contrary. No doubt, Defendant may argue that Plaintiff's testimony shows he *was* adequately trained, and Defendant cites other evidence supporting that view, including written training material and the testimony of its own expert, Mr. Palacios. But the fact that there is conflicting evidence merely confirms that summary judgment is inappropriate.

The Court likewise concludes that a genuine dispute of material fact precludes summary judgment on the claim that Plaintiff was not properly supervised, by a foreman or otherwise, while using the claw bar. The evidence includes Defendant's written policy stating the responsibilities of a foreman, which include include "[e]nsuring tools, materials, and equipment . . . are used . . . properly," "training, and ensuring the safety of employees under their charge," and "[e]nsuring work is performed safely [and] properly." (ECF No. 56 at 20; ECF No. 56-5.) Drawing on this written policy, Mr. Lydick opines that a foreman should have been present and should have corrected Plaintiff's improper use of the claw bar (ECF No. 46-1 at 11, 12), and the Court has held these

---

have used the claw bar differently even if a foreman had been present should withdraw these issues from dispute. The Court disagrees. Plaintiff's testimony is *at most* an evidentiary admission, rather than a judicial admission. *See Keller v. United States*, 58 F.3d 1194, 1198 n. 8 (7th Cir. 1995) ("A judicial admission is conclusive, unless the court allows it to be withdrawn; ordinary evidentiary admissions, in contrast, may be controverted or explained by the party.").

opinions are admissible. When viewed in the light most favorable to Plaintiff, this evidence and testimony creates a genuine dispute as to whether it was negligent for Defendant not to have a foreman or supervisor present at the time of Plaintiff's injury. The jury may also reasonably infer that if a foreman had been present, he or she would have corrected the way Plaintiff used the claw bar, and thus prevented his injury. Plaintiff's co-worker, Andrew Slaughter, also testified that if Joe Salazar, the foreman at the Golden railyard, had been present, "[he] would have c[o]me up to [Plaintiff] and [] told him how to use a claw bar correctly." (ECF No. 56-8 at 6–7.) Therefore, the Court finds that genuine disputes remain as to whether Defendant was negligent in not having a foreman or other supervisor present, and whether this contributed to Plaintiff's injury.

Because the evidence reflects genuine disputes of material fact as to whether Plaintiff was negligently trained and supervised in the use of a claw bar, and as to whether such alleged negligence caused Plaintiff's injury, summary judgment is not appropriate against these theories, and Defendant's motion is denied to the extent that Plaintiff may proceed on these theories.

    3.    <u>Inadequate Crew Size</u>

Plaintiff also asserts that Defendant was negligent in "not providing an adequate crew" (ECF No. 61 at 5), and that "[t]he evidence is in conflict concerning properly manning the job" (ECF No. 53 at 16–18). As best the Court can discern, this theory rests on the speculative claim that if more workers had been present, someone else might have been pulling the loose spike instead of Plaintiff. However, Plaintiff has testified that pulling spikes was "part of his job description" (ECF No. 46-3 at 19), has admitted that "he performed the same work as a laborer," and that "[w]hen on the

16

jobsite, a truck driver has all the responsibilities as a laborer" (ECF No. 53 at 9). He also testified that he does not believe Defendant was negligent "for just asking [him] to remove the spikes." (ECF No. 46-3 at 19.)

Defendant argues that "[t]here is no evidence to suggest that if the crew had more members, Plaintiff would not have been tasked with removing spikes," and that Plaintiff "cannot prove, as a matter of law, that the crew's size contributed to his injury." (ECF No. 45 at 11–12.) Plaintiff's response cites conflicting evidence regarding how many workers were actually present, and allegedly reflecting a dispute about what an adequate crew size would have been. (ECF No. 53 at 16–17.) However, Plaintiff points to no evidence responding to Defendant's argument or showing that he can carry his burden by proving that an allegedly inadequate crew size led or contributed in any way to his injury. (*See generally id.* at 24–30.) To the contrary, Plaintiff has withdrawn Mr. Lydick's previously-offered opinion that "the accident would not have occurred if there had been a full crew." (*See* ECF No. 46-1 at 12; ECF No. 56 at 24.) Given Plaintiff's failure to respond to this argument, his withdrawal of his expert's opinion, and the absence of cited evidence showing Plaintiff could carry his burden on the causation element of this theory, the Court deems this argument conceded, finds there is no genuine dispute of material fact as to whether an inadequate crew size contributed to Plaintiff's injury, and grants summary judgment against this theory of negligence.

### IV. CONCLUSION

For the reasons set forth above the Court ORDERS as follows:

1. Defendant BNSF Railway Company's Motion for Summary Judgment (ECF No. 45) is GRANTED IN PART and DENIED IN PART, as explained above;

2. This matter REMAINS SET for a Final Trial Preparation Conference on May 19, 2017, and for a 5-day jury trial to commence June 5, 2017; and,

3. At trial, Plaintiff will be PRECLUDED from pursuing any theory of negligence against which the Court has granted summary judgment as explained above, and the Court will limit the scope of Plaintiff's claims, arguments, and evidentiary presentation accordingly.

Dated this 9th day of May, 2017.

BY THE COURT:

_____
William J. Martinez
United States District Judge