# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge William J. Martínez

Civil Action No. 15-cv-2268-WJM-NYW

GEORGE MILLER,

    Plaintiff,

v.

BNSF RAILWAY COMPANY, a Delaware Corporation,

    Defendant.

---

## ORDER ON MOTIONS *IN LIMINE*

---

In this case brought pursuant to the Federal Employer's Liability Act, 45 U.S.C. §§ 51 *et seq.* ("FELA"), Plaintiff George Miller ("Plaintiff") claims he was injured as a result of one or more negligent acts or omissions by Defendant, BNSF Railway Company ("Defendant" or "BNSF"), while he was employed there. The Court has explained the relevant factual and legal background of this case in detail in other recent Orders (*see* ECF Nos. 91, 92), and familiarity with that background is presumed. Now before the Court are Plaintiff's Motion *In Limine* Concerning Various Issues (ECF No. 81 ("Plaintiff's Motion")) and Defendant's Motion *In Limine* on Various Evidentiary Issues (ECF No. 79 ("Defendant's Motion")). For the reasons explained below, each motion is granted in part and denied in part.

## I. PLAINTIFF'S MOTION

### A. Assumption of the Risk, and BNSF's "Empowerment" and Safety Rules

Plaintiff moves for a pretrial order precluding Defendant from raising an

assumption of the risk defense or "arguing that Plaintiff assumed the risk of his employment, that he was injured as a result of the purported 'normal risks and hazards' associated with railroading, or that he violated BNSF's . . . rules under which employees are purportedly 'empowered' to work safely." (ECF No. 81 at 1.)

Assumption of the risk is a prohibited defense under FELA, which states that an employee "shall not be held to have assumed the risks of his employment in any case where [plaintiff's] injuries or death resulted in whole or in part from the negligence of [the defendant]." 45 U.S.C. § 54. When Congress adopted this provision, "every vestige of the doctrine of assumption of risk was obliterated from the law." *Tiller v. Atl. Coast Line R. Co.*, 318 U.S. 54, 58 (1943). "The result is an Act which requires cases tried under [FELA] to be handled as though no doctrine of assumption of risk had ever existed." *Id. at 64.* However, FELA also contains a mandatory contributory negligence provision: "damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee." 45 U.S.C. § 53.[1]

Here, Plaintiff argues that Defendant should be prohibited from presenting

---

[1] The jury's reduction of an award to a FELA plaintiff in proportion to any negligence attributed to that plaintiff is more properly described as "comparative negligence," rather than "contributory negligence," since the latter term traditionally suggests that a plaintiff is barred from recovery, rather than having his recovery reduced. *See Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 542 (1994) (FELA, as amended, has "rejected the doctrine of contributory negligence in favor of that of comparative negligence"); *see generally Black's Law Dictionary* (10th ed. 2014) ("comparative negligence" means "[a] plaintiff's own negligence that proportionally reduces the damages recoverable from a defendant," while "contributory negligence" traditionally means "[a] plaintiff's own negligence that played a part in causing the plaintiff's injury that is significant enough (in a few jurisdictions) to bar the plaintiff from recovering," or "[a] negligence-based legal defense that constitutes a bar to liability"). However, the parties and many of the cases discussed persist in using the term "contributory negligence" to describe the proportional reduction of an award under FELA, and the Court also uses that term here, for consistency with the sources cited and quoted.

2

"assumption of the risk evidence under the guise of contributory negligence by invoking its so-called 'empowerment' rules." (ECF No. 81 at 3.) These rules call on Defendant's employees in generic terms to "'take the safe course' when performing their job duties" and "empower" them to refuse to perform tasks if they believe them unsafe. (*See id.*) Plaintiff predicts that Defendant may use evidence and argument regarding these rules at trial to improperly smuggle in a prohibited assumption of risk defense. Defendant acknowledges the defense is prohibited and states it "will not argue that Plaintiff 'assumed the risk of injury,'" but will argue contributory negligence. (ECF No. 84 at 1.) Defendant further claims that its "empowerment policy" is relevant because it "tends to show that Plaintiff's workplace was reasonably safe," and that the fact Plaintiff "did not empower himself" by refusing to perform his assigned work duties, "demonstrates that he did not believe his work was unsafe." (*Id.* at 1, 2.)

In addressing essentially the same issue in a prior case, this Court made the following ruling:

> [E]vidence of any contributory negligence by Plaintiff is a necessary component of evaluating Plaintiff's claim, and may not be excluded. However, courts have distinguished between [contributory negligence and assumption of the risk] by noting that evidence of contributory negligence is that which shows "a careless act or omission on the plaintiff's part tending to add new dangers to conditions that the employer negligently created or permitted to exist," as opposed to evidence of assumption of risk, which is "an employee's voluntary, knowledgeable acceptance of a dangerous condition that is necessary for him to perform his duties." *Taylor v. Burlington N. R.R. Co.*, 787 F.2d 1309, 1316 (9th Cir. 1986).
>
> Furthermore, and particularly with regard to the type of evidence Defendant seeks to introduce, the Court notes that the Tenth Circuit has distinguished between violations of

3

> "specific, objective safety rules," which may constitute negligence *per se*, and violations of general safety rules which are "not specific enough to supply a standard the jury could apply." *Green v. Denver & Rio Grande W. R.R. Co.,* 59 F.3d 1029, 1034 (10th Cir. 1995). The Tenth Circuit held that a proposed jury instruction was improper because it "fail[ed] to limit the jury to consideration of specific, objective safety rules," and instead "would allow a finding of negligence without requiring the jury to find the rule violation contributed to the injury." *Id.* While *Green* was concerned with the employer's violation of a safety rule as evidence of its negligence, the Tenth Circuit's holding applies equally to evidence of an employee's violation of a safety rule as evidence of contributory negligence.
>
> Accordingly, the Court declines to exclude all evidence of Defendant's "empowerment" safety rules, but notes that Defendant will not be permitted to introduce evidence that Plaintiff assumed an inherent risk merely by performing his duties, nor will Defendant be entitled to an instruction that Plaintiff's violation of a safety rule may be considered in evaluating contributory negligence unless that safety rule is both specific and objective.

*Evans v. Union Pac. R.R. Co.*, 2015 WL 1945104, at *1–2 (D. Colo. Apr. 29, 2015).

The Court sees no reason to reach a different result here, and therefore adopts the reasoning and result in *Evans*, as quoted above.[2] Plaintiff's cited authorities do not

---

[2] Based on the parties' summary judgment briefing, it appears that at least three safety rules may become relevant at trial: the "empowerment" rules, Defendant's rules regarding the duties of a foreman, and Defendant's rule regarding proper use of a claw bar. The Court does not make rulings on the admissibility of these rules at this time. Those determinations will depend on how the evidence is actually raised at trial. However, in the interest of promoting efficiency and encouraging counsel to confer in advance on these issues, the Court notes the following here:

1. The Court is inclined to agree with Plaintiff that the "empowerment" rules are not sufficiently "specific and objective" to bear on contributory negligence.

2. However, depending how the evidence is raised, the Court is also inclined to agree with Defendant that these rules may be relevant to show that Plaintiff believed his workplace to be reasonably safe, as distinct from raising the prohibited inference or argument that Plaintiff knew his workplace was *unsafe*

support a pretrial order excluding evidence. Only one case cited by Plaintiff addresses an evidentiary ruling, *Gaskins v. CSX Transportation*, 2006 WL 6864633, at *1 (N.D. Ga. Sep. 5, 2006). However, *Gaskins*, is generally consistent with this Court's decision here and in *Evans*. In *Gaskins*, the district court, citing *Green*, also denied a pretrial motion to exclude evidence of safety rules, given the defendant's "representations that it will not present evidence seeking to establish assumption of the risk," and the "identifi[cation of] particular safety rules that [defendant] claims [plaintiff] violated." *Id.* at *1 (also citing *Parra v. Atchison, Topeka & Santa Fe Ry. Co.*, 787 F.2d 507, 508–09 (10th Cir. 1986)); *but see id.*, at *11 (stating general safety rules would be inadmissible as "nothing more than a Defendant's attempt to establish assumption of the risk").

Nearly all the other cases cited by Plaintiff address whether trial courts gave proper jury instructions regarding contributory negligence and/or assumption of the risk, without improperly permitting an assumption of the risk defense to be submitted to the jury.[3] As in *Evans*, Defendant will not be entitled to a jury instruction that Plaintiff's

---

<div style="margin-left: 2em;">but nevertheless "assumed the risk."</div>

3. In contrast, the Court is inclined to conclude that the rule regarding proper use of the claw bar is sufficiently "specific and objective" to be properly considered as to contributory negligence.

[3] *See Fashauer v. N.J. Trans. Rail Ops.*, 57 F.3d 1269, 1273–74 (3d Cir. 1995) (reviewing whether district court erred in its contributory negligence jury charge and refusal to explicitly charge that assumption of the risk is not a defense); *Jenkins v. Union Pac. R. Co.*, 22 F.3d 206, 211–12 (9th Cir. 1994) (in light of conflicting evidence, district court should have given instructions on both contributory negligence and assumption of the risk); *Birchem v. Burlington N. R. Co.*, 812 F.2d 1047, 1048–50 (8th Cir. 1987) (reviewing district court's refusal to give contributory negligence instruction); *Parra*, 787 F.2d at 508–09 (trial court properly "gave an instruction concerning the effect of any negligence on the part of [plaintiff]," but "declined to give . . . any other instruction dealing specifically with the alleged violation of [a non-specific safety rule]"); *Taylor*, 787 F.2d at 1316–17 ("The trial court did not err, as the Railroad here claims, in its refusal to submit to the jury the question of whether the employee either assumed a risk or was contributorily negligent."); *William v. Atl. Coast Line R. Co.*, 190 F.2d 744, 748 (5th

5

violation of a safety rule may be considered as to contributory negligence, unless the rule is both specific and objective.  Further, the Court recognizes that evidence of the "empowerment" rules may call for a more specific instruction foreclosing an improper assumption of the risk defense.  See Jenkins, 22 F.3d at 212 (district court erred by failing to give instruction that "prevent[ed] the jury from considering the forbidden defense of assumption of the risk while allowing it to make factual findings on the issue of comparative negligence"); Birchem, 812 F.2d at 1049 ("district court properly admonished the jury . . . that the Railroad's theory was an impermissible effort to transfer to [plaintiff] its nondelegable duty to provide safe equipment and a safe working environment").  However, final ruling on any such instruction(s) must await the actual presentation of evidence at trial.

Given the foregoing discussion, Plaintiff's Motion as to assumption of the risk and Defendant's "empowerment" rules is GRANTED IN PART, to the extent the Court will limit argument that improperly advances an assumption of the risk defense and will, as needed, give jury instructions that foreclose such a defense.  Plaintiff's Motion is also DENIED IN PART on this issue, to the extent the Court will not exclude all evidence of Defendant's "empowerment" or other safety rules.

**B.    Railroad Retirement Board Benefits**

Plaintiff moves to exclude evidence that Plaintiff has received benefits from the Railroad Retirement Board (or may in the future).  (ECF No. 81 at 5–7.)  Plaintiff is

---

Cir. 1951) (trial court gave improper jury instruction allowing assumption of the risk defense); see also Green, 59 F.3d at 1034 (reviewing district court's "refus[al] to instruct [the] jury that violation of safety rules may be negligence"); Benson v. CSX Transp., Inc., 274 F. App'x 273, 276 (4th Cir. 2008) (reviewing district court's entry of judgment as a matter of law).

correct that "the collateral source rules prohibits admission of RRA disability benefits in a FELA case." *Green*, 59 F.3d at 1032–33 (citing *Eichel v. New York Central R.R.*, 375 U.S. 253 (1963)).

Without conceding that railroad benefits are "per se inadmissible," Defendant promises that it "will not introduce this evidence unless Plaintiff opens the door by claiming, for instance, that he cannot participate in his recovery or obtain his drivers' license because of his financial condition." (ECF No. 84 at 3.) Defendant further reserves its right to "infor[m] the jury that Plaintiff would have been eligible for a pension at age 60 if he kept working." (*Id.*)

Following *Green* and given Defendant's position, Plaintiff's Motion is GRANTED to exclude evidence regarding Plaintiff's Railroad Retirement Board benefits. While the Court fails to see the potential relevance of evidence regarding Plaintiff's pension eligibility, it defers ruling on this issue, in case Defendant can show at trial how this fact is relevant and admissible. By necessity, the Court also defers any ruling on whether Plaintiff has "opened the door" to evidence regarding any other benefits.

**C.     Evidence of Workplace Discipline**

Plaintiff moves to exclude evidence "that [Defendant] disciplined or reprimanded Plaintiff at any point prior to the accident." (ECF No. 81.) Defendant does not object (ECF No. 84 at 3), and Plaintiff's Motion is therefore GRANTED to exclude such evidence.

**D.     Evidence of Prior Illnesses, Injuries, Accidents, or Health Conditions**

Plaintiff moves to exclude all "evidence of prior accidents, injuries or illnesses and any other health conditions that Plaintiff has suffered, and from arguing or

7

suggesting to the jury that [Defendant] is exonerated from liability because [Plaintiff] had a heightened susceptibility to injury." (ECF No. 81 at 8.) Plaintiff's only cited support is *Shuff v. Consol. Rail Corp.*, 1994 WL 548232, at *6 (N.D. Ill. Oct. 5, 1994), which deferred ruling on a similar motion until trial, noting that "evidence of prior injuries which *do not relate to the plaintiff's current condition* is irrelevant." *Id.* (emphasis added). Here, Defendant argues that such evidence does strongly relate to Plaintiff's current condition in that it tends to show that Plaintiff's claimed injuries—including shoulder pain and limited work opportunities—are caused by conditions other than the injury at issue in this lawsuit. The Court agrees with Defendant that such evidence is relevant and admissible in that it bears on Plaintiff's claim that his injuries and claimed damages were caused by Defendant's alleged negligence, not by some other injury or condition. Plaintiff's Motion is DENIED on this issue.

**E.    Prior Claims**

Plaintiff seeks to exclude evidence "that Plaintiff previously filed a claim unrelated to this accident," arguing such evidence would be prejudicial and only tend to show that Plaintiff is overly litigious or has a bad character. (ECF No. 81 at 9.) Defendant argues that Plaintiff has previously claimed he was disabled or foreclosed from working, as a result of injuries and conditions unrelated to the accident and injury at issue here. As with evidence of alleged alternative causes of Plaintiff's claimed injuries, the Court agrees with Defendant that any such prior disability claim for unrelated conditions is relevant to defending Plaintiff's claim that Defendant's negligence was the cause of his inability to work, lost wages, or similar claimed damages. Accordingly, Plaintiff's Motion is DENIED on this issue.

## F. Child Support

Plaintiff moves to exclude as prejudicial and irrelevant any "evidence that Plaintiff owes past due child support." (ECF No. 81 at 9.) Defendant "does not intend to introduce evidence of Plaintiff's past due child support payments," but argues it is relevant that Plaintiff's drivers' license has been suspended as a result and that this is "admissible because it explains his refusal to look for work and mitigate his damages." (ECF No. 84 at 5.) Defendant states that it wishes only to introduce the facts "that: (a) Plaintiff is not looking for work because he does not have a drivers' license, and (b) Plaintiff's claimed injury [relevant in this case] is not the reason, even in part, for his suspended license." (*Id.*)

The Court finds that *any* reference to past due child support payments would be highly prejudicial. *See* Fed. R. Evid. 403. However, Defendant does not seek to introduce such evidence, and the Court agrees with Defendant's explanation of how the fact that Plaintiff lacks a driver's license for reasons unrelated to this case is relevant to his claim for damages and Defendant's defense of mitigation. Therefore, evidence establishing those facts may be briefly introduced. However, this may only be done in a non-prejudicial fashion that gives no hint or implication of past due child support, and is presented in terms indicating that Plaintiff "lacks" or "does not have" a driver's license for reasons unrelated to this case, without raising the fact that his license has been "suspended," for some unspecified reason, which could only invite improper speculation by the jury. Plaintiff's Motion is therefore GRANTED on this issue, consistent with the Court's expectation stated above.

**G.      Evidence Concerning Plaintiff's Consumption of Alcohol**

Plaintiff moves to exclude "evidence that Plaintiff consumes alcohol." (ECF No. 81.) Defendant argues the Court should defer ruling on this issue, because Plaintiff's "pursuit of leisure activities, such as drinking in bars . . . is at least potentially relevant to . . . whether he has made genuine effort to return to work." (ECF No. 84 at 5.) Defendant also argues this evidence might be relevant because if it could show that Plaintiff's alcohol consumption increased "to levels that would have jeopardized his ability to work at BNSF." (*Id.*) However, Defendant fails to explain how any marginal relevance on these ancillary points would overcome the significant prejudice of introducing such evidence. Plaintiff's Motion is therefore GRANTED on this issue, pursuant to Rule 403.

## II.  DEFENDANT'S MOTION

**A.      Evidence of Medical Bills Already Paid by BNSF**

Defendant moves to exclude "all evidence of Plaintiff's medical bills," other than unpaid bills totaling $587. (ECF No. 79 at 1–4.) Plaintiff agrees to this exclusion.[4] Accordingly, Defendant's Motion is GRANTED on this issue.

---

[4] Defendant's Motion certified to the Court that "counsel has conferred with the Plaintiff in good faith concerning the relief sought . . . . [and] Plaintiff objects." (ECF No. 79 at 1.) Contrary to this representation, Plaintiff's Response (ECF No. 83) indicates that Plaintiff does *not* object to four of the seven issues raised in Defendant's Motion. Likewise, Plaintiff's Motion certified that "Defendant is opposed to the relief requested" (ECF No. 81 at 1), but Defendant's Response revealed that Defendant was *not* opposed (in whole or in part) to at least three of seven issues raised by Plaintiff (ECF No. 84). This record hardly reflects adequate "good faith" compliance with counsels' duty to confer under Local Rule 7.1(a). *See Hoelzel v. First Select Corp.*, 214 F.R.D. 634 (D. Colo. 2003). The Court is highly displeased both with counsel's seeming inability or refusal to talk to one another, and the sloppy and inaccurate representations made to the Court with regard to the nature of the limited discussions that did in fact take place. Counsel are cautioned that similar cavalier disregard for their duty to confer in the future may likely result in sanctions.

**B.      Evidence or Argument Regarding Hydraulic Spike Puller**

Defendant moves to exclude "any argument that [Defendant] can be deemed negligent because a hydraulic spike puller is safer than a claw bar." (*Id.* (citing *Atl. Coast Line R.R. Co. v. Dixon*, 189 F.2d 525, 527 (5th Cir. 1951) and *Stillman v. Norfolk & W. Ry. Co.*, 811 F.2d 834, 838 (4th Cir. 1987)). The Court has already analyzed the relevant legal issue at length in ruling on summary judgment, granting partial summary against any theories of negligence that depend on the claim that Defendant had a duty to provide a hydraulic spike puller instead of a claw bar, or that use of a hydraulic spike puller would have prevented Plaintiff's injury. (ECF No. 92 at 8–13.) The Court has therefore already ruled that Plaintiff is barred from presenting such theories of negligence to the jury, and that the Court will preclude any evidence or argument as to such theories at trial. (*Id.* at 13, 18.)

At the summary judgment phase, the Court concluded that Plaintiff had conceded this legal issue. (*Id.* at 10.) In opposing summary judgment and Defendant's *Daubert* Motion against Plaintiff's expert, Mr. Lydick, Plaintiff filed a combined total of 54 pages of briefing, which did not directly respond to this legal issue (ECF Nos. 53, 56), and never addressed the *Dixon* and *Tiller* cases on which Defendant again relies here.

Plaintiff now, finally, directly responds to this authority. Confirming he concedes the legal issue, Plaintiff acknowledges that "Defendant is correct that BNSF is not required to provide its employees with the best or most perfect appliances." (ECF No. 83.) But, Plaintiff nevertheless argues that evidence of alternative available tools should be permitted pursuant to *Stone v. New York, Chicago & St. Louis R. Co.*, 344

11

U.S. 407, 409 (1953).

*Stone* does not warrant admitting evidence regarding alternative tools in this case. The evidence in *Stone* reflected a dispute as to whether the method actually used had been reasonably safe. The fact that alternative methods had been available was therefore relevant the jury's determination: "Whether the straw boss in light of the risks should have used another or different method . . . is the issue. To us it appears to be a debatable issue on which fair-minded men would differ." *Id.* at 409. Here, because the Court has already concluded there is no dispute that the claw bar was a reasonably safe tool (if used correctly), evidence regarding any alternative or safer tools or methods is not relevant.

The only other case cited by Plaintiff is *Williams v. N.E. Ill. Regional Commuter R.R. Corp.*, 2002 WL 1433724, at *8 (N.D. Ill. June 28, 2002). There, as in *Stone*, conflicting evidence raised "a genuine issue of material fact . . . as to whether the sledgehammer [the tool actually used] was reasonably safe," so a jury issue remained as to "whether [the railroad's] use of the sledgehammer was reasonable and whether a safer alternative method was available." *Id.* *Williams* distinguished *Dixon* and *Stillman*, noting that "*[o]nly when it is determined that the railroad exercised reasonable care is testimony regarding safer alternatives properly excluded*." *Id.* (emphasis added).[5] This, however, *is* a case where it the Court has already determined there is no genuine

---

[5] *See also Uhl v. CSX Transp.*, 2009 WL 1749372, at *7 (S.D. W.Va. June 18, 2009) (distinguishing *Stone* from *Stillman*; allowing evidence of safer alternatives where issue of whether railroad exercised reasonable care was disputed (citing *Williams*)); *Fitzgerald v. Buffalo & Pittsburgh R.R.*, 2011 WL 3163241, at *7-8 (W.D. Pa. Mar. 7, 2011) (competing evidence that repetitive use of sledgehammers presented risks raised dispute as to whether use of the tool was reasonably safe, so evidence of potential alternatives was permitted), *recommendation adopted*, 2011 WL 3203729 (W.D. Pa. July 25, 2011).

dispute that the claw bar was a reasonably safe tool.

Under the authorities analyzed in the Court's summary judgment order, and consistent with *Stone*, evidence of alternative or safer tools is not relevant to any negligence claim that remains viable in this case, and could confuse the jury about what issues remain in dispute. Defendant's Motion on this issue is therefore GRANTED pursuant to Federal Rules of Evidence 401–03 and consistent with the Court's summary judgment order.

**C.      Berkshire Hathaway, Warren Buffet, and BNSF's Financial Condition**

Defendant moves to exclude as irrelevant and prejudicial any "evidence regarding the financial condition, wealth, power, corporate status or size of BNSF," including "any reference to BNSF's corporate parents and any relationship with Berkshire Hathaway Inc., Warren Buffet, or any investors in Berkshire Hathaway Inc." (ECF No. 79 at 5.) Plaintiff agrees to this exclusion. (ECF No. 83 at 2.) Accordingly, Defendant's Motion is GRANTED on this issue.

**D.      This Lawsuit as the "Sole Remedy for Recovery"**

Defendant moves to exclude "evidence or argument that [FELA], this lawsuit, or the jury's verdict is Plaintiff's 'only chance' . . . 'sole source or remedy,'" or similar words. (ECF No. 79 at 6.) Plaintiff states that he "intends to discuss this issue in [only] two ways." (ECF No. 83 at 2.)

First, Plaintiff wishes to argue "in closing or otherwise," along the lines that "this is Plaintiff's opportunity to seek damages," and "[t]oday is the day that he will learn what he will receive." (*Id.*) The Court does not read such general argument as falling within the exclusion sought by Defendant or supported by its authority, so Defendant's Motion

13

is DENIED to the extent the Court will allow general closing argument commentary similar to that suggested in Plaintiff's Response.

Second, Plaintiff wishes to "briefly explain to the jury in *voir dire* that this is not a workers' compensation case and that Plaintiff's right of recovery, if any, is governed under the FELA." *Id.* at 2–3 (citing *Wright v. BNSF Ry. Co.*, 2016 WL 1611595, at *3 (N.D. Okla. Apr. 22, 2016) (deferring ruling on a similar request).) The Court fails to see how commentary explaining what this case is *not* about is relevant to any issue the jury will decide or how it would advance in any way "the primary purpose" of *voir dire*, that is, "to make possible the empanelling of an impartial jury through questions that permit the intelligent exercise of challenges by counsel." *Miller v. Francis*, 269 F.3d 609, 615 (6th Cir. 2001).

Plaintiff suggests a potential juror might have "a bias toward Plaintiff due to the fact that his right of recovery is governed by federal law and not workers' compensation" and that jurors might be confused "as many people understand that work-related injuries are handled under workers' compensation laws." (ECF No. 83 at 3.) The Court finds these suggestions to be speculative, unsupported, and unpersuasive. Discussion regarding what this case is *not* about is more likely to inject confusion than to cure it. The Court's jury selection procedures are more than adequate to weed out the vanishingly-slim possibility of seating a juror who harbors an undisclosed bias against "recovery [] governed by federal law," and the Court's instructions will cure any confusion as the nature of Plaintiff's single pending negligence claim brought pursuant to FELA. Defendant's Motion is therefore GRANTED to exclude such comments during *voir dire*.

### E. Purpose and History of FELA

Defendant seeks to exclude "any remark . . . regarding the alleged Congressional intent, purpose, or history of [FELA]." (ECF No. 79 at 7.) Plaintiff agrees that "he may not discuss Congressional intent," but "intends to briefly mention that FELA was enacted specifically for railroad workers one hundred years ago." (ECF No. 83 at 3.) Even if such a historical statement is not particularly objectionable, Plaintiff fails to explain how it is tends to show that any fact of consequence in this case is either more or less probable. Fed. R. Evid. 401. Accordingly, Defendant's Motion is GRANTED on this issue.

### F. Punitive Damages

Defendant seeks to exclude any arguments "insinuating that the jury could (or should) by its verdict express its feelings about the case and that the jury should send a message to BNSF," as improperly injecting a claim akin to punitive damages (which are not at issue) into this case. (ECF No. 79 at 7.) Plaintiff agrees to this exclusion. (ECF No. 83 at 3.) Accordingly, Defendant's Motion is GRANTED on this issue.

### G. Disciplinary Investigation of Plaintiff

Defendant seeks to exclude any evidence relating to a disciplinary investigation of Plaintiff that Defendant conducted after he returned from medical leave "to determine if he violated company rules regarding timely and honestly reporting injuries." (ECF No. 79 at 8.) Plaintiff agrees to this exclusion. (ECF No. 83 at 3.) Accordingly, Defendant's Motion is GRANTED on this issue.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendant BNSF Railway Company's Motio[n] *In Limine* On Various Evidentiary Issues (ECF No. 79) is GRANTED IN PART AND DENIED IN PART, as set forth above; and,

2. Plaintiff's Motio[n] *In Limine* Concerning Various Issues (ECF No. 81) is GRANTED IN PART AND DENIED IN PART, as set forth above.

Dated this 11th day of May, 2017.

BY THE COURT:

William J. Martinez
United States District Judge