UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:15-cv-02268-WJM-NYW

GEORGE MILLER,

    Plaintiff,

v.

BNSF RAILWAY COMPANY, a Delaware corporation,

    Defendant.

---

**BNSF RAILWAY COMPANY'S MOTION FOR JUDGMENT AS A MATTER OF LAW**

---

COMES NOW the Defendant, BNSF Railway Company, by and through its attorneys, Keith Goman and Christopher Gatewood of Hall & Evans, L.L.C., and files its Motion for Judgment as a Matter of Law pursuant to Fed. R. Civ. P. 50. BNSF states the following in support:

**INTRODUCTION AND FACTUAL BACKGROUND**

Mr. Miller has sued BNSF pursuant to the Federal Employer's Liability Act (FELA), claiming that BNSF negligently furnished an unsafe workplace, including various other theories of negligence, resulting in his alleged on-duty injury on October 24, 2012.

On October 24, 2012, Mr. Miller's crew was tasked with changing out a piece of rail in the railyard in Golden, Colorado. The job consisted of removing an old rail and installing a new rail in its place. Part of Mr. Miller's job duties involved using a claw bar to remove railroad spikes that were holding the existing rail in place. Mr. Miller claims that when he went to remove one of

the spikes, he "pulled [the claw bar] with everything he had", and he claims that the spike unexpectedly came loose, causing the claw bar to hit him in the shoulder.

In granting BNSF's Motion for Summary Judgment in part, Mr. Miller's negligence theories were limited to allegations that 1) Mr. Miller was inadequately trained on the safe use of the claw bar and 2) BNSF did not provide Mr. Miller with proper supervision while using the claw bar on October 24, 2012.[1] Each of those theories fails as a matter of law.

First, the undisputed evidence demonstrates that Mr. Miller was properly trained to safely use a claw bar to remove spikes. Had Mr. Miller not disregarded his training and BNSF's rules for using a claw bar, Mr. Miller's injury would not have occurred. Furthermore, BNSF could not have foreseen Mr. Miller's negligence.

Second, the presence of a foreman, or other supervisor, is not required at job sites under BNSF's rules. Mr. Miller admitted that had a foreman been present, he would have still incorrectly used the claw bar. Accordingly, BNSF is entitled to judgment as a matter of law because Mr. Miller has not proven a *prima facie* negligence case.

In the alternative, BNSF respectfully requests this Court determine as a matter of law that Mr. Miller's conduct amounts to contributory negligence and thereby grant BNSF judgment as a matter of law on the question of whether Mr. Miller acted with contributory negligence.

## STATEMENT OF FACTS SUPPORTING JUDGMENT AS A MATTER OF LAW

The following facts were either admitted by Mr. Miller, or his experts, during trial or are otherwise not genuinely in dispute:

1. On October 24, 2012, Mr. Miller and his crew were assigned to change out a piece of rail in the Golden railyard. Part of Mr. Miller's duties included using a claw bar to remove

---

[1] Doc. 92, Order Granting in Part Defendant's Motion for Summary Judgment, filed 05/09/17.

railroad spikes securing the existing rail. Mr. Miller testified that a foreman was not present while he was using the claw bar. When Mr. Miller was using the claw bar to remove one of the spikes, he "pulled [the claw bar] with everything he had", and he claims that the spike unexpectedly came loose, causing the claw bar to hit him in the shoulder. Over the 18 months of Mr. Miller's employment with BNSF, he used the claw bar the exact same way to remove spikes. However, no foreman had ever instructed Mr. Miller to use the claw bar differently.

2. When Mr. Miller was hired by BNSF, he received hands on training to use a claw bar. Bill Sherman, a BNSF truck driver, and several other employees taught Mr. Miller how to use a claw bar. Mr. Miller testified that Bill Sherman trained him to remove spikes with a claw bar as depicted in BNSF's Exhibit A-70. Joe Lydick, Mr. Miller's liability expert, testified that BNSF's Exhibit A-70 shows the proper way to use a claw bar to remove a spike. Mr. Miller believes that he could safely use a claw bar to remove spikes on October 24, 2012, and he had in fact done so hundreds of times over his 18 months with BNSF. Mr. Miller does not feel that he needed additional training for using a claw bar. Mr. Lydick testified that by refusing or failing to follow BNSF's training, Mr. Miller was at fault.

3. BNSF's Maintenance of Way Safety Rule S-7.8.2, BNSF's Exhibit A-5, contains BNSF's rule for the use of a claw bar. The Rule mandates that employees using a claw bar should "stand beside the claw bar and position your hands to keep them from striking the opposite rail or other object if the spike head breaks or releases suddenly; use firm footing," and "work the spike up with short, firm thrusts and watch for throat-cut or loose spikes." Mr. Miller testified that he did not use the claw bar to work the spike up with short or firm thrusts. Mr. Miller used one long and hard thrust when using the claw bar, virtually ensuring that he would strike himself in the face, chest or shoulder if the claw bar came loose. Mr. Miller testified that he did not follow Rule S-7.8.2 when using the claw bar on October 24, 2012. Mr. Miller solely made the decision to use the claw bar in violation of his training and rule S-7.8.2.

4. BNSF provided Mr. Miller with a book of safety rules, but Mr. Miller testified that he had not read all the rules. BNSF's employees are expected to know and follow safety rules while working. Mr. Miller agreed that BNSF trusted him to use the claw bar in the correct manner as outlined in BNSF's book of safety rules.

5. Mr. Lydick testified that a claw bar is a very basic long-standing tool in the railroad industry and every railroad uses claw bars to remove spikes. Per Mr. Lydick, the claw bar that BNSF gave Mr. Miller was a reasonably safe tool. Mr. Lydick stated that it is not realistic to have a supervisor watching every employee pull every spike. He also agreed that BNSF's rules do not require a foreman to remain on scene while other employees are working. BNSF's rules permit foremen, including other supervisors, to leave employees while at a job site as long as a qualified employee in charge remains behind. Mr. Lydick testified that George Miller and Mr. Komer were both rules qualified employees on October 24, 2012. Both Mr. Komer and Mr. Miller can be designated as a qualified

employee in charge. Mr. Lydick agreed that if a qualified employee remains behind, there is no violation of a federal regulation or BNSF's rules.

6. Andrew Slaughter and Travis Komer both testified that foremen are often not present while employees are working. Mr. Komer, a safety assistant for BNSF, was working with Mr. Miller when he was allegedly injured. Mr. Komer believes that BNSF provided a safe place to work while he was with Mr. Miller on October 24, 2012.

## **LEGAL ARGUMENT**

### A. Standard for Motion for Judgment as a Matter of Law.

Motions for Judgment as a Matter of Law are governed by Rule 50 of the Federal Rules of Civil Procedure, which states:

> **(1)** *In General.* If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
> **(A)** resolve the issue against the party; and
> **(B)** grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Judgement as a matter of law is appropriate if the evidence points but one way and is susceptible to no reasonable inferences which may support the nonmoving party's position. *Auraria Student Hous. at the Regency, LLC v. Campus Vill. Apts., LLC*, 843 F.3d 1225, 1247 (10th Cir. 2016). The moving party is entitled to a judgment as a matter of law if the nonmoving party failed to make a showing on an essential element of his case with respect to which he had the burden of proof. *Bryan v. James E. Holmes Reg'l Med. Ctr.*, 33 F.3d 1318, 1333 (11th Cir. 1994). Furthermore, more than a scintilla of evidence is required to submit the case to the jury. *See McAndrew v. Del. & Hudson Ry.*, No. 3:11-CV-01727, 2015 U.S. Dist. LEXIS 51062, at *6 (M.D. Pa. 2015) ("[M]ore than a scintilla of evidence is needed to sustain a verdict.").

### B. Mr. Miller received proper training for how to safely remove a spike with a claw bar.

When Mr. Miller began working for BNSF, he received training on how to properly and safely use a claw bar to remove a spike. Mr. Miller identified Bill Sherman as the person who trained him to use a claw bar. Mr. Miller agreed that Mr. Sherman trained him to use the claw bar as shown in BNSF's Exhibit A-70, and Mr. Lydick admitted that the method shown in BNSF's Exhibit A-70 is the proper way to use a claw bar. Mr. Miller admitted he was properly trained to use a claw bar, agreeing that "there isn't much to train" because "it's a pretty simple task." Thus, Mr. Miller was properly trained to use a claw bar to safely remove spikes before the alleged October 24, 2012, incident. However, Mr. Miller chose to use the claw bar in a manner that was contrary to his training. Therefore, Mr. Miller has failed to show that his training was a cause of his alleged injury.

### C. Mr. Miller has failed to prove that BNSF should have reasonably foreseen his injury.

In order to prevail on a negligence claim under the FELA, a plaintiff must prove each of the traditional elements of a common law negligence suit, including duty, breach, foreseeability and causation. *Volner v. Union Pac. R. Co.*, 509 F. App'x. 706, 708 (10th Cir. 2013) (citing *Hardyman v. Norfolk & W. Ry.* 243 F.3d 255, 258 (6th Cir. 2001)), *Huffman v. Union Pac. R.R.*, 675 F.3d 412, 418 (5th Cir. 2012) and *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 540 (1994)). Whether an injury is foreseeable must be determined based on "what should have been anticipated and not merely what happened." *Taylor v. Missouri Pacific Railroad Co*., 510 S.W.2d 735 (Mo.App. 1974).

The FELA does not require an employer or coworker to foresee that an employee will act negligently or in violation of specific safety rules. *See Stenvik v. Constant*, 502 N.W.2d 416, 421 (Minn. App. 1993) ("[A] person may assume that every other person will use reasonable care and

will obey the law until the contrary reasonably appears."). If an unsafe means of performing the work is chosen by a plaintiff, despite the fact that he has a safe means provided for him, he must then show that the railroad should have anticipated or reasonably expected that he would choose an unsafe method in which to perform his duty. *Frizzell v. Wabash Ry. Co.*, 199 F.2d 153 (8th Cir. 1952).

Mr. Miller testified that Bill Sherman trained him to remove a spike with a claw bar as depicted in BNSF's Exhibit A-70. Mr. Lydick agreed that BNSF's Exhibit A-70 demonstrates the proper way to use a claw bar to remove a spike. It is undisputed that BNSF's employees are expected to know and follow safety rules, which includes Rule S-7.8.2, while working. Mr. Miller agreed that BNSF trusted him to use the claw bar in the correct manner as outlined in BNSF's book of safety rules. However, Mr. Miller disregarded his training and chose to violate BNSF's safety rules when using the claw bar on October 24, 2012. BNSF was not required to foresee that Mr. Miller would act negligently, disregard his training, and violate Rule S-7.8.2. *See Stenvik*, at 421. Thus, Mr. Miller is required to show that BNSF should have anticipated that he would choose an unsafe method when using the claw bar, but Mr. Miller has failed to make such a showing. Therefore, Mr. Miller has not satisfied the foreseeability element in this case.

**D. The lack of a foreman at the jobsite does not establish negligence on behalf of BNSF.**

Mr. Lydick, claims that Mr. Miller did not have proper oversite from a foreman, or other supervisory personnel, at the jobsite. However, Mr. Lydick also admitted that:

- Nothing in BNSF's Maintenance of Way Operating Rules require a foreman at every job site;
- Nothing in BNSF's Maintenance of Way Safety Rules say that a foreman must be at the job site the entire time a crew is working;
- BNSF's Engineering Instructions specifically permit foremen, track inspectors or other supervisors to leave a job site while work is being performed;

6

- If a foreman or other supervisor leaves the worksite, a qualified employee in charge can remain behind; and
- Mr. Miller and Mr. Komer could both be designated as a qualified employee in charge on October 24, 2012.

The undisputed facts demonstrate that Mr. Miller's alleged accident happened because he disregarded his training and violated a specific, objective safety rule put in place for his protection. Nevertheless, the lack of a foreman or other supervision at the jobsite does not prove BNSF's negligence. BNSF does not require the presence of a foreman at every job site, and foreman are often not present while other employees are working, as stated by Mr. Komer and Mr. Slaughter. Regardless, both Mr. Miller and Mr. Komer were qualified employees in charge that remained behind at the worksite on October 24, 2012, which establishes that BNSF complied with its rules and federal regulations.

The lack of a foreman was not a cause of Mr. Miller's alleged injury because had a foreman been present, Mr. Miller would have—by his admission—still incorrectly used the claw bar. Mr. Lydick's opinion that a foreman would have corrected Mr. Miller's behavior is at best speculative and contrary to the evidence in the record. Mr. Miller testified that over his 18 months of employment with BNSF, no foreman has ever instructed him to use the claw bar differently than he did on October 24, 2012. Thus, to claim that a foreman would have stepped in and altered Mr. Miller's behavior on October 24, 2012, is not supported by evidence. Moreover, Mr. Komer, a safety assistant for BNSF, testified that while he was working with Mr. Miller in the Golden yard, BNSF provided him with a safe workplace.

**E. Mr. Miller's violation of BNSF's Maintenance of Way Safety Rule S-7.8.2 conclusively proves that Mr. Miller acted with contributory negligence. Even if this Court denies BNSF's Motion, the Court should find as a matter of law that Mr. Miller was contributorily negligent.**

Even if the Court cannot conclude at this time that Mr. Miller's unforeseeable negligence solely caused his injury, the undisputed facts outlined above — including Mr. Miller's sworn admissions — establish that Mr. Miller was contributorily negligent as a matter of law. *See, e.g., Mely*, 219 F.2d at 203; *see also Atchison, T. & S. F. R. Co. v. Ballard*, 108 F.2d 768, 771 (5th Cir. 1940) ("But, where, as here, there is a precise definition of restricted speed, the question of what the rule means and requires, is a question of law for the court[.]"); s*ee, e.g., Harris v. Illinois Cent. R.R.*, 58 F.3d 1140, 1144 (6th Cir. 1995) (trial court erred in failing to instruct the jury that an employee's violation of safety rules constitutes negligence); *see also Green v. Denver & Rio Grande W. R.R. Co.*, 59 F.3d 1029, 1034 (10th Cir. 1995) (violations of "specific, objective safety rules" may constitute negligence per se). Mr. Miller admitted that he violated BNSF's Maintenance of Way Rules (S-7.8.2) on October 24, 2012. Rule S-7.8.2 reads,

**S-7.8.2   Claw Bar**

When using a claw bar:

1. Place the claw securely under the spike head.
2. Use a spike lifter if you cannot get the claw under the spike head. A claw bar is not a struck tool.
3. Stand beside the claw bar and position your hands to keep them from striking the opposite rail or another object if the spike head breaks or releases suddenly; use firm footing.
4. Work the spike up with short, firm thrusts and watch for throat-cut or loose spikes.
5. Use a piece of wood, spike, or other suitable object under the claw bar heel for additional leverage.
6. Be sure the end of the claw bar is well underneath to prevent slipping when using it to nip ties, tie plates, or rail.

Because no reasonable juror could find that Mr. Miller complied with Safety Rule S-7.8.2, BNSF is entitled to judgment as a matter of law. *See* F.R.C.P. 50(a)(1)(a). Therefore, BNSF is entitled to judgment as a matter of law on its affirmative defense that Mr. Miller acted with contributory negligence.

## **CONCLUSION**

For the reasons stated, BNSF respectfully requests that this Honorable Court grant judgment as a matter of law in BNSF's favor because the undisputed facts demonstrate that Mr. Miller was properly trained to safely use a claw bar, Mr. Miller has failed to establish the element of foreseeability, and the lack of a foreman at the jobsite does not constitute negligence on BNSF's behalf. In the alternative, BNSF requests that this Honorable Court determine, as a matter of law, that Mr. Miller acted with contributory negligence when he disregarded his training and violated Rule S-7.8.2.

DATED this 7th day of June, 2017.

HALL & EVANS, L.L.C.


By: *s/ Christopher Gatewood*
Keith M. Goman, #37769
Christopher Gatewood, #48147
HALL & EVANS, L.L.C.
1001 Seventeenth Street, Suite 300
Denver, Colorado 80202-2052
Telephone: 303-628-3300
Facsimile: 303-628-3368
Email: gomank@hallevans.com
gatewoodc@hallevans.com

## **CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certify that on this 7th day of June, 2017, I served a copy of the foregoing through the CM/ECF, addressed to:

Jeff Seely, Esq.
Gordon, Elias & Seely, LLP
1811 Bering Drive, Suite 300
Houston, TX 77057

*s/ Ramona Cruz*
Ramona Cruz, Legal Assistant